# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| TANYA G.,<br><br>                Plaintiff,<br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | CASE NO. C19-1209 BHS<br><br>ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |

## I.    BASIC DATA

Type of Benefits Sought:

    (X) Disability Insurance

    (X) Supplemental Security Income

Claimant's:[1]

    Sex: Male

    Age: 33 at the time of alleged amended disability onset.

Principal Disabilities Alleged by Claimant: Skin infection, high blood pressure, posttraumatic stress disorder ("PTSD"), and anxiety. Admin. Record ("AR") at 126–27.

---

[1] The claimant in this matter, Brian T., died before this case was filed. *See* Admin. Record ("AR") at 8–10. The Court refers to Brian T. as "Claimant" and Tanya G. as "Plaintiff."

Disability Allegedly Began: June 29, 2015.[2]

Principal Previous Work Experience: Project engineer, administrative clerk, warehouse manager, shipping and receiving clerk, craft foreman, and farm worker.

Education Level Achieved by Plaintiff: Associate degree.

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before Administrative Law Judge ("ALJ") Ilene Sloan:

    Date of Hearing: November 20, 2017

    Date of Decision: May 31, 2018

    Appears in Record at: AR at 31–44

    Summary of Decision:

        The claimant has not engaged in substantial gainful activity since June 29, 2015, the amended alleged onset date. *See* 20 C.F.R. §§ 404.1571–76, 416.971–76.

        The claimant has the following severe impairment: Major depressive disorder, attention deficit hyperactivity disorder, PTSD, personality disorder, alcohol dependence, and chronic venous stasis, status-post grafts. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

        The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

        The claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except he can occasionally climb ramps and stairs, crouch, and crawl. He cannot climb ropes, ladders, and scaffolds. He must avoid concentrated exposure to hazards, such as moving machinery or unprotected heights. He can understand, remember, and carry out simple, routine, and repetitive tasks. He can have occasional contact with the

---

[2] Claimant originally alleged an onset date of June 10, 2010, but amended the date to June 29, 2015 at the hearing. *See* AR at 55, 127.

general public, but such contact shall not be an essential element of any job task.

The claimant is unable to perform any past relevant work. *See* 20 C.F.R. §§ 404.1565, 416.965.

The claimant was a younger individual (age 18–49) on the alleged amended disability onset date. *See* 20 C.F.R. §§ 404.1563, 416.963.

The claimant has at least a high school education and is able to communicate in English. *See* 20 C.F.R. §§ 404.1564, 416.964.

Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills. *See* Social Security Ruling 82–41; 20 C.F.R. Part 404, Subpart P, Appendix 2.

Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. *See* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).

The claimant has not been under a disability, as defined in the Social Security Act, from June 29, 2015, through the date of the ALJ's decision. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Before Appeals Council:

Date of Decision: June 5, 2019

Appears in Record at: AR at 1–3.

Summary of Decision: Denied review.

### III.     PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

# IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

# V. EVALUATING DISABILITY

Plaintiff bears the burden of proving Claimant was disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). A claimant is disabled under the Act only if his impairments are of such

severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

## VI. ISSUES ON APPEAL

A. Whether the ALJ erred in failing to address Claimant's allegations regarding daytime napping.

B. Whether the ALJ gave specific and legitimate reasons for rejecting the opinions of treating psychiatrist Paul Grekin, M.D.

C. Whether the ALJ gave specific and legitimate reasons for rejecting the opinions of examining psychologist Katherine Kelly, Ph.D.

## VII. DISCUSSION

**A. The ALJ Harmfully Erred in Failing to Address Claimant's Testimony Regarding His Need to Nap During the Day**

Plaintiff argues Claimant "clearly testified that due to his chronic insomnia, he would have to regularly nap during the day." Pl. Op. Br. (Dkt. # 10) at 2. Plaintiff

argues the ALJ erred by ignoring this statement, and therefore failing to give valid reasons for rejecting it. *See id.*

Claimant testified that he "usually only [got] two to three hours a night of sleep," so he would get up "sporadically throughout the day." AR at 58. Claimant testified that "during the day, [he] nod[s] off and on." AR at 79. Claimant testified that he would fall asleep for 15 to 40 minutes two to three times a day due to his fatigue. AR at 79–80.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged. *Id.*

The ALJ found that Claimant had not shown that he had a medically determinable sleep disorder. *See* AR at 34. The Commissioner argues that, as a result, Claimant failed to meet the first step of the Ninth Circuit's test, and the ALJ was not required to consider Claimant's testimony regarding daytime napping. Def. Resp. Br. (Dkt. # 13) at 2–3. This analysis assumes that napping and fatigue can only be caused by sleep disorders. But many impairments can cause poor sleep, such as PTSD. *See* AR at 754–57.

Claimant did not establish the existence of a sleep disorder, but the ALJ did find several mental disorders, including PTSD, to be severe impairments. *See* AR at 33–34. Moreover, the ALJ acknowledged that Claimant alleged "insomnia," and the ALJ found that "[C]laimant's medically determinable impairments could reasonably be expected to cause [his] alleged symptoms." AR at 37, 39. Claimant therefore met the first step of the Ninth Circuit's testimony assessment test.

If the claimant meets the first step of this test, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ discounted Claimant's testimony here because she found that it was inconsistent with the medical evidence. *See* AR at 37–38. But the ALJ failed to point to any actual evidence in the record to support her position. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341,

345–46 (9th Cir. 1991).[3]  "'To support a lack of credibility finding, the ALJ was required to point to *specific facts* in the record . . . .'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Vasquez v. Astrue,* 572 F.3d 586, 592 (9th Cir. 2009)).  The ALJ failed to meet this standard, and thus erred in discounting Claimant's testimony.

**B.      The ALJ Harmfully Erred in Rejecting Dr. Grekin's Opinions**

Plaintiff argues the ALJ erred by failing to give specific and legitimate reasons for rejecting Dr. Grekin's opinions.  Pl. Op. Br. at 3–6.  Dr. Grekin was Claimant's treating psychiatrist.  *See* AR at 759–99, 860–903.  He submitted a letter and medical source statement in June 2017 stating his opinions on Claimant's limitations.  *See* AR at 860–64.  Dr. Grekin opined that Claimant had moderate to marked limitations in sustained concentration and persistence, including a marked limitation in the ability to perform activities within a schedule, maintain attendance, and complete a normal work day or week without interruptions from his psychologically based symptoms.  *See* AR at 861.  Dr. Grekin opined that Claimant had mild to moderate limitations with social interaction and adaption.  *See* AR at 861–62.

The ALJ gave Dr. Grekin's opinions little weight.  AR at 40.  The ALJ reasoned that Dr. Grekin "base[d] his opinion, in part, on a 'REM behavior disorder' diagnosis that is unsupported in the record by any specific diagnostic measure or sleep study, and is clearly based on the claimant's reports of poor sleep."  *Id.*  The ALJ also determined that

---

[3] These cases remain good law even though the Social Security Administration ("SSA") has since issued Social Security Ruling 16–3p, 2017 WL 5180304 (2017), which removed the term "credibility" from the SSA's sub-regulatory policy and clarified the standards by which the SSA would assess a claimant's testimony.  *See Trevizo*, 871 F.3d at 678 n.5.

Claimant's ability to maintain attendance was not supported by the record. The ALJ last noted that "the claimant's statements to Dr. Grekin regarding alcohol use are inconsistent with reports elsewhere in the record." *Id.*

An ALJ may reject the opinions of a treating doctor when contradicted if the ALJ provides "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ did not meet this standard.

The ALJ's first reason for rejecting Dr. Grekin's opinions fails because the ALJ erred in discounting Claimant's testimony, and the lack of a sleep study to support the REM behavior disorder diagnosis does not disprove Claimant's symptoms. *See supra* Part VII.A. The ALJ therefore could not reasonably reject Dr. Grekin's opinions for relying on that testimony.

The ALJ next erred in finding that Dr. Grekin's opinions on Claimant's ability to maintain attendance were not supported by the record. The ALJ reasoned that "[t]hough the claimant missed some appointments with Dr. Grekin, he made significant efforts to overcome barriers to treatment." AR at 40. This explanation is too vague to withstand scrutiny. *See Burrell*, 775 F.3d at 1137; *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). That Claimant tried to overcome barriers to treatment says little about whether he could maintain regular attendance. The ALJ thus erred in rejecting Dr. Grekin's opinions on Claimant's ability to maintain attendance.

The ALJ similarly erred in rejecting Dr. Grekin's opinions based on an apparent inconsistency between Claimant's reports of alcohol use to Dr. Grekin versus elsewhere

in the record. The ALJ did not specify the inconsistency, nor is one apparent. *See* AR at 40. Moreover, Dr. Grekin noted that Claimant "intermittently struggles with drinking," further undermining the ALJ's apparent reasoning. *See* AR at 863. The ALJ's analysis was thus once again too vague to withstand review. *See Burrell*, 775 F.3d at 1137. The ALJ consequently failed to give specific and legitimate reasons for rejecting Dr. Grekin's opinions, and harmfully erred.

**C.     The ALJ Partially Erred in Rejecting Dr. Kelly's Opinions**

Plaintiff argues the ALJ erred by failing to provide specific and legitimate reasons to reject Dr. Kelly's opinions. Pl. Op. Br. at 6–9. Dr. Kelly examined Claimant on January 23, 2016. *See* AR at 754–57. She conducted a clinical interview and mini mental status exam. *See id.* Dr. Kelly opined that Claimant would "likely have difficulty maintaining effective social interactions with supervisors, co-workers, and the public in a reasonable manner, and should he work, it would need to be in a small environment." AR at 757. Dr. Kelly opined that Claimant would have moderate difficulty understanding, carrying out, and remembering simple and complex instructions on a consistent basis. *Id.* Dr. Kelly opined that Claimant would have "difficulty sustaining concentration to persist in a work-related activity at a reasonable pace." *Id.*

The ALJ gave Dr. Kelly's opinions little weight. AR at 39–40. The ALJ rejected Dr. Kelly's social limitation opinion because it was "inconsistent other treatment records, and . . . generally based upon the claimant's subjective complaints." AR at 39. The ALJ further found that Claimant's presentation at Dr. Kelly's exam, as well as his daily activities, contradicted Dr. Kelly's social limitation opinion. *See id.*

The ALJ rejected Dr. Kelly's other opinions because she found them inconsistent with other treatment records and Claimant's performance on objective testing. *See* AR at 39–40.

An ALJ must provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of an examining doctor. *See Lester*, 81 F.3d at 830–31 (citing *Andrews*, 53 F.3d at 1043). The ALJ failed to meet this standard with respect to Dr. Kelly's social limitation opinion, but met it with respect to Dr. Kelly's other opinions.

The ALJ's determination that Dr. Kelly's social limitation was inconsistent with other treatment records is too generic. *See Burrell*, 775 F.3d at 1137. The ALJ noted several findings from Dr. Kelly's exam, such as that Claimant "had good eye contact, was cooperative, and easily established rapport." AR at 39. But these minor findings, particularly considering that they came in the context of interaction with a professional specifically trained to treat mental health issues, do not provide a substantial evidentiary basis to reject Dr. Kelly's social limitation opinion.

The ALJ further erred in rejecting Dr. Kelly's social limitation opinions as too heavily based on Claimant's self-reports. Again, the ALJ erred in rejecting Claimant's subjective symptom testimony, and thus could not reject Dr. Kelly's opinions for relying on Claimant's statements. *See supra* Part VII.A.

The ALJ also erred in rejecting Dr. Kelly's social limitation opinion as inconsistent with Claimant's daily activities. The ALJ noted that Claimant took his dog for walks and attended a barbecue with friends, but neither fact is inconsistent with an

opinion that Claimant should work in a small environment because he would have difficulty maintaining effective social interactions. The ALJ thus erred in rejecting Dr. Kelly's social limitation opinion.

Plaintiff has failed to show, however, that the ALJ harmfully erred in rejecting Dr. Kelly's other opinions. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error). An ALJ may discount a doctor's opinions when they are inconsistent with or unsupported by the doctor's own clinical findings. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Kelly noted that Claimant's "concentration was within fair limits," and he had good recall on testing and in providing historical information. *See* AR at 757. These findings were inconsistent with Dr. Kelly's opinions regarding Claimant's concentration and memory. The ALJ thus did not err in rejecting these opinions.

**D.     Scope of Remand**

Plaintiff cursorily asks the Court to remand this matter for an immediate award of benefits or, if the case is remanded for further proceedings, to direct a new ALJ to consider the matter because "the current ALJ's decision shows an extreme unwillingness to address the medical records even remotely accurately." Pl. Op. Br. at 10. Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). And the Court generally will not disqualify an ALJ unless actual bias is shown. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003). Because Plaintiff presents no argument

in support of either of her requests, the Court finds they have not been adequately argued. *See Maldonado v. Morales*, 556 F.3d 1037, 1048 n.4 (9th Cir. 2009) ("Arguments made in passing and inadequately briefed are waived."). The Court therefore remands this matter for further administrative proceedings. The Commissioner may reassign this matter to a new ALJ, but the Court will not order him to do so.

On remand, the ALJ shall reevaluate Claimant's testimony regarding his need to nap during the day. The ALJ shall reevaluate Dr. Grekin's opinions, and Dr. Kelly's social limitation opinion. The ALJ shall reevaluate all relevant steps of the disability evaluation, and conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

## VIII. ORDER

Therefore, it is hereby ORDERED that the Commissioner's final decision denying Claimant disability benefits is REVERSED and this matter is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 7th day of April, 2020.

BENJAMIN H. SETTLE
United States District Judge